UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____           │
│ DATE FILED: March 19, 2015           │
└─────────────────────────────────────┘
```

TANYA SALLUSTRO, Individually and on
Behalf of all Others Similarly Situated,

        Plaintiff,

    - against -

CANNAVEST CORP., MICHAEL MONA,
JR., BART P. MACKAY, THEODORE R.
SOBIESKI, EDWARD A. WILSON, and
MICHAEL MONA, III,

        Defendants.

**MEMORANDUM
OPINION & ORDER**

14 Civ. 2900 (PGG)

MICHAEL A. SICILIANO, Individually and on
Behalf of all Others Similarly Situated,

        Plaintiff,

    - against -

CANNAVEST CORP., MICHAEL MONA,
JR., BART P. MACKAY, THEODORE R.
SOBIESKI, EDWARD A. WILSON, and
MICHAEL MONA, III,

        Defendants.

14 Civ. 3079 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pending before the Court are five motions to appoint lead plaintiff, approve lead

counsel, and consolidate two putative class actions brought under the federal securities laws by

shareholders of CannaVest Corp. ("CannaVest" or the "Company").  Sallustro v. CannaVest

Corp., Case No. 14 Civ. 2900 (PGG); Siciliano v. CannaVest Corp., Case No. 14 Civ. 3079

(PGG).[1]  For the reasons stated below, these actions will be consolidated, Steve Schuck's motion to be appointed lead plaintiff will be granted, and the four competing motions for lead plaintiff status will be denied.[2]

## BACKGROUND

CannaVest is a publicly traded company headquartered in Las Vegas, Nevada whose shares are listed on the OTC Bulletin Board under the symbol "CANV." (Cmplt. (Dkt. No. 2) ¶¶ 7-8)  CannaVest's primary business is the manufacture, marketing, and sale of consumer products containing industrial hemp-based compounds, including the hemp plant extract cannabidiol ("CBD").  (Id. ¶ 7)

On April 3, 2014, CannaVest filed a Form 8-K with the SEC stating that it had misreported its financial condition on Form 10-Qs for the quarters ending March 31, 2013, June 30, 2013, and September 30, 2013, and that it intended to issue corrective disclosures for those quarters.  (Id. ¶ 28)  In trading that day, shares of CannaVest stock fell $7.30 per share, or more than 20%, to close at $25.30 per share.  (Id. ¶ 29)

On April 14, 2014, CannaVest filed an Amended Form 8-K in which it disclosed, inter alia, that it had overstated its goodwill by more than 1300% and its sales by more than 17%.  (Id. ¶¶ 30, 32)  After this second disclosure, the Company's stock declined $4.49 per share, or 19.5%, to close at $18.51 per share.  (Id. ¶ 31)

The complaints in these actions were filed on April 23, 2014 (the "Sallustro Complaint") and April 29, 2014 (the "Siciliano Complaint").  The Class Period is defined in both

---

[1]  Unless otherwise indicated, all docket references in this opinion refer to the docket in Sallustro v. Cannavest Corp., 14 Civ. 2900 (PGG).

[2]  A sixth motion – filed by Mark Williams (Dkt. No. 30) – was withdrawn on July 24, 2014. (Dkt. No. 44)

complaints as May 20, 2013 through April 3, 2014. (Sallustro Cmplt. (Dkt. No. 2) ¶ 1; Siciliano Cmplt. (14 Civ. 3079, Dkt. No. 2) ¶ 1)

## I.   CONSOLIDATION

All movants seek consolidation of these actions, and the Court has received no objection to the requests for consolidation.

Fed. R. Civ. P. 42(a) provides that a district court may consolidate "actions before the court involv[ing] a common question of law or fact." Fed. R. Civ. P. 42(a). "'A determination on the issue of consolidation is left to the sound discretion of the Court,'" In re UBS Auction Rate Sec. Litig., No. 08 Civ. 2967 (LMM), 2008 WL 2796592, at *1 (S.D.N.Y. July 16, 2008) (quoting Albert Fadem Trust v. Citigroup Inc., 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002)), and involves weighing considerations of convenience, judicial economy, and cost reduction while ensuring that the "paramount concern for a fair and impartial trial" is honored. Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990).

Here, consolidation is plainly appropriate. Both cases arise from the same alleged misrepresentations made by CannaVest in its Form 10-Qs for the quarters ending March 31, 2013, June 30, 2013, and September 30, 2013. (Sallustro Cmplt. (Dkt. No. 2) ¶¶ 21-27; Siciliano Cmplt. (14 Civ. 3079, Dkt. No. 2) ¶¶ 20-26) Moreover, the parties assert similar claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and the complaints name the same defendants.[3] (Sallustro Cmplt. (Dkt. No. 2) ¶¶ 1-2; Siciliano Cmplt. (14 Civ. 3079, Dkt. No. 2) ¶¶ 1-2) Accordingly, pursuant to Rule 42(a), these two actions – as well as any other

---

[3] The Complaints name as defendants CannaVest; Michael Mona, Jr., CannaVest's President and Chief Executive Officer; Bart P. Mackay, Theodore R. Sobieski, and Edward A. Wilson, all of whom sit on the Company's board of directors; and Michael Mona, III, the Company's Vice President of Operations. (Sallustro Cmplt. (Dkt. No. 2) ¶¶ 7-14; Siciliano Cmplt. (14 Civ. 3079, Dkt. No. 2) ¶¶ 7-13)

3

related CannaVest class actions hereafter filed in or hereafter transferred to this Court – will be consolidated.

The actions shall be referred to collectively as In re: CannaVest Corp. Securities Litigation, No. 14 Civ. 2900 (PGG) (the "Consolidated CannaVest Corp. Class Action"). The Clerk of Court shall file a copy of this Order in the separate file for each of the above-captioned CannaVest Corp. class action cases. Unless otherwise ordered by this Court, future filings in any CannaVest Corp. class action case herein consolidated shall be filed and docketed only under docket number 14 Civ. 2900 (PGG). All counsel who have entered appearances in the above-captioned class action cases shall be deemed to have entered an appearance in the Consolidated CannaVest Corp. Class Action under the docket number 14 Civ. 2900 (PGG). All motions for admission pro hac vice and all orders granting such motions in the above-captioned actions shall also be deemed filed in the Consolidated CannaVest Corp. Class Action under the docket number 14 Civ. 2900 (PGG).

Counsel is directed to alert the Clerk of Court to the filing or transfer of any case that might properly be consolidated as part of this litigation. Any class action involving substantially related questions of law and fact hereafter filed in or transferred to this Court shall be consolidated under the master file number assigned to this case.

Every pleading filed in the Consolidated CannaVest Corp. Class Action under the docket number 14 Civ. 2900 (PGG) shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: CANNAVEST CORP. SECURITIES LITIGATION | 14 Civ. 2900 (PGG) |

4

The Court's consolidation order does not make any person, firm, or corporation a party to any action in which the person or entity has not been named, served, or added as such in accordance with the Federal Rules of Civil Procedure.

## II.     APPOINTMENT OF LEAD PLAINTIFF

### A.     Presumptive Lead Plaintiff:  Largest Financial Interest

#### 1.     Legal Standard

The Private Securities Litigation Reform Act of 1995 ("PSLRA") directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a "[r]ebuttable presumption" that "the most adequate plaintiff . . . is the person or group of persons" that "has the largest financial interest in the relief sought by the class," provided that such person or group "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" Id. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc)). This presumption may be rebutted upon a showing that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

"The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest'. . . ." In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436 (S.D.N.Y. 2008). Many courts in this District, however, have determined a prospective lead plaintiff's financial interest by looking to "(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiff[] during the class period; and (4) the approximate losses suffered by the plaintiff[]." In re CMED Sec. Litig., No. 11 Civ. 9297

(KBF), 2012 WL 1118302, at *3 (S.D.N.Y. Apr. 2, 2012) (citing Lax v. First Merchants

Acceptance Corp., Nos. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); see also

Richman v. Goldman Sachs Grp., Inc., 274 F.R.D. 473, 475 (S.D.N.Y. 2011) (citing same); In re

Fuwei Films, 247 F.R.D. at 437 (same). "Most courts agree that the largest loss is the critical

ingredient in determining the largest financial interest and outweighs net shares purchased and

net expenditures."[4] Richman, 274 F.R.D. at 479; see also Bo Young Cha v. Kinross Gold Corp.,

No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *2 (S.D.N.Y. May 31, 2012) (collecting cases).

In calculating loss, "[c]ourts in this district have a 'very strong preference' for the 'last-in, first-

out' method of calculating losses."[5] Rosian v. Magnum Hunter Res. Corp., No. 13 Civ. 2668

(KBF), 2013 WL 5526323, at *1 (S.D.N.Y. Oct. 7, 2013) (quoting Richman, 274 F.R.D. at 476).

---

[4] The PSLRA includes a statutory cap on damages, which is calculated based on the "difference between the purchase or sale price paid . . . by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. § 78u-4(e)(1).

[5] "To calculate the approximate losses sustained by a proposed lead plaintiff in a securities class action, courts, including in this district, typically employ one of two methodologies: First-In-First-Out ('FIFO') or Last-In-First-Out ('LIFO')." Bo Young Cha, 2012 WL 2025850, at *3. "LIFO calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale. The alternative . . . FIFO[], assumes that the first stocks to be sold are the stocks that were acquired first." Foley v. Transocean Ltd., 272 F.R.D. 126, 129 (S.D.N.Y. 2011). "These methodologies can yield significantly different results where, as of the start of the class period, the plaintiff held stocks in the issuer which it had purchased earlier." Bo Young Cha, 2012 WL 2025850, at *3. While the Second Circuit has yet to adopt a "categorical rule for the appropriate measurement of losses where there is a pre-existing inventory of stock followed by purchases and sales during the class period," Ellenburg v. JA Solar Holdings Co. Ltd., 262 F.R.D. 262, 265 (S.D.N.Y.2009), "the overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses." Bo Young Cha, 2012 WL 2025850, at *3. "'The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due [to] the inflation of the stock price." City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc., 269 F.R.D. 291, 295 (S.D.N.Y. 2010).

### 2.    Proposed Lead Plaintiffs

There are five contenders for lead plaintiff status.  Based on the motion papers

submitted to this Court, the relevant financial interest factors are as follows:

| Movant | Shares Purchased During the Class Period | Net Shares Purchased During the Class Period | Net Funds Expended During the Class Period | Approximate Losses Suffered |
|--------|------------------------------------------|----------------------------------------------|--------------------------------------------|-----------------------------|
| Jane Ish | 503 | 373[6] | $72,112.39[7] | $65,017.63[8] |
| Steve Schuck | 500 | 500 | $70,000.00 | $60,550.00 |
| Otilda Lamont | 990 | 370 | $43,260.80 | $36,749.00 |
| Wayne Chesner | 1100 | 1100 | $57,200.00 | $35,200.00 |
| Anamaria Schelling | 280 | 230 | $34,425.00 | $31,741.50 |

(See Ish Corrected Br. (Dkt. No. 39) at 6; Johnathan P. Seredynski's Declaration in Support of

---

[6] Ish states that her "net shares purchased" figure is 243, but does not explain how she arrived at that number. (Ish Corrected Br. (Dkt. No. 39) at 6)  From her transaction history, it appears that Ish purchased 503 shares and sold 130 shares during the class period, resulting in a "net shares purchased" figure of 373.  (See Seredynski Decl. (Dkt. No. 40) at 3)

[7] Ish represents that she spent $86,665.39 on CannaVest shares during the class period (Ish Corrected Br. (Dkt. No. 39) at 6), but that number does not reflect the $14,543 she received from the sale of CannaVest stock on March 10, 2014.  (See Seredynski Decl. (Dkt. No. 40) at 3)  Accordingly, her "net funds expended" figure is $72,112.39.

[8] On June 24, 2014, the day after the PSLRA's sixty-day filing deadline, Ish filed a second brief in support of her motion which sets forth a different loss analysis.  The new analysis asserts that Ish suffered losses of $65,017.63, rather than the $52,430.96 set forth in her original papers.  (Ish Corrected Br. (Dkt. No. 39) at 1)  Ish's counsel explains that, "[a]s a result of a clerical error in the creation of the loss chart, Movant [Ish]'s losses were originally calculated at $52,430.96, which is $12,586.67 less than her actual loss of $65,017.63."  (Ish Corrected Br. (Dkt. No. 39) at 1 n.2)  At an August 14, 2014 hearing concerning the instant motions, this Court concluded that "the change made in the second brief was . . . a simple a correction of a mathematical error," and announced that it would "utilize, for purposes of considering these motions, the . . . corrected $65,000 figure. . . ."  (Aug. 14, 2014 Tr. (Dkt. No. 52) at 8)

Jane Ish's Corrected Motion ("Seredynski Decl.") (Dkt. No. 40) at 3; Schuck Br. (Dkt. No. 22) at

2; William B. Federman's Declaration in Support of Steve Schuck's Motion ("Federman Decl.")

(Dkt. No. 23), Exs. 1, 2; Lamont Br. (Dkt. No. 28) at 2, 5; Thomas J. McKenna's Declaration in

Support of Otilda Lamont's Motion ("McKenna Decl.") (Dkt. No. 29), Ex. 2; Chesner Br. (Dkt.

No. 20), Exs. 2, 3; Schelling Br. (Dkt. No. 35) at 6; Ira M. Press's Declaration in Support of

Anamaria Schelling's Motion ("Press Decl.") (Dkt. No. 36), Exs. 2, 3)

   As an initial matter, movants Lamont and Schelling have not opposed Ish and

Schuck's motions, and therefore have not rebutted the "largest financial interest" presumption.

Accordingly, Lamont and Schelling cannot be considered for appointment as lead plaintiff, see

In re CMED, 2012 WL 1118302, at \*4 (citing In re Orion Sec. Litig., No. 08 Civ. 1328 (RJS),

2008 WL 2811358, at \*6 (S.D.N.Y. July 8, 2008)), and their motions to be appointed lead

plaintiff will be denied.

   The three remaining movants – Ish, Schuck, and Chesner – each posit different

methodologies for calculating loss. By way of background, Schuck purchased 500 shares of

CannaVest stock on February 21, 2014,[9] at a price of $140.00 per share, retained those shares,

and claims losses of $60,550.00. (Schuck Br. (Dkt. No. 22) at 2; Federman Decl. (Dkt. No. 23),

Exs. 1, 2) Chesner purchased 1100 shares of CannaVest stock on April 1, 2014, at a price of

$52.00 per share, and claims losses of $35,200 upon selling those shares at a price of $20.00 per

share on April 14, 2014. (Chesner Br. (Dkt No. 20) Ex. 3) Finally, Ish purchased 503 shares of

CannaVest stock on February 24, 2014, at multiple prices, paying a total of $86,665.39 for the

stock. (Ish Corrected Br. (Dkt. No. 39) at 6) Ish sold 130 shares on March 10, 2014, before the

---

[9] It is undisputed that the CannaVest stock purchases made by Ish, Schuck, and Chesner all took place within the Class Period.

April 3, 2014 corrective disclosure. (Seredynski Decl. (Dkt. No. 40) at 3) Ish sold an additional 50 shares after the April 24, 2014 disclosure, but retained the remaining 323 shares. (Id.) Ish claims that, as a result of the alleged fraud, she lost $65,017.63 during the Class Period. (Ish Corrected Br. (Dkt. No. 39) at 6)

### i. Ish's Loss Calculation

Ish's loss calculation includes trading losses she realized before CannaVest's April 3, 2014 corrective disclosures. (Ish Corrected Br. (Dkt. No. 39) at 6; Seredynski Decl. (Dkt. No. 40) at 3) "Under Dura Pharmaceuticals v. Broudo, 544 U.S. 336, 342-43 (2005), [however,] such losses are not recoverable in a securities fraud action because the losses are not proximately caused by the defendant's misstatements." In re LightInTheBox Holding Co., Ltd. Sec. Litig., No. 13 Civ. 6016 (PKC), 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013). In other words, "under Dura and its progeny, any losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation." In re Comverse Tech., Inc. Sec. Litig., No. 06 Civ. 1825 (NGG) (RER), 2007 WL 680779, at * 4 (E.D.N.Y. Mar. 2, 2007), adhered to on reconsideration, No. 06 Civ. 1825 (NGG) (RER), 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008).

In Dura Pharmaceuticals, the Supreme Court held that a plaintiff in a private securities fraud action must prove a causal connection between plaintiff's alleged loss and the defendant's fraudulent conduct. Dura Pharmaceuticals, 544 U.S. at 345-46. Plaintiffs typically demonstrate loss causation by identifying a disclosure of the fraud that caused a drop in the price of the stock. In Dura, however, the Court noted that where "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any

loss." Id. at 342. Accordingly, "[i]n cases such as this one (i.e., fraud-on-the-market cases), an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." Id.

"While the Dura court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint [lead plaintiff and] lead counsel." In re LightInTheBox, 2013 WL 6145114, at *3. Therefore, when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures. See, e.g., Porzio v. Overseas Shipholding Group, Nos. 12 Civ. 7948, et al., 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013) (denying lead plaintiff status to investor group where most of the stock purchased was sold before corrective disclosure); Bensley v. FalconStor Software, Inc., 277 F.R.D. 231, 235-42 (E.D.N.Y. 2011) (denying lead plaintiff status to a so-called "in-and-out" trader, where stock was arguably sold before the company's disclosure of fraud); In re Veeco Instruments Inc. Sec. Litig., 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (rejecting applicant for lead plaintiff status where applicant had sold all of its stock prior to curative disclosure); see also Kops v. NVE Corp., Nos. 06 Civ. 574 (MJD) (JJG), et al., 2006 WL 2035508, at *5 (D. Minn. July 19, 2006) (rejecting lead plaintiff applicant who sold all his shares prior to corrective disclosure); Ruland v. InfoSonics Corp., Nos. 06 Civ. 1231 (BTM) (WMC), et al., 2006 WL 3746716, at *5-6 (S.D. Cal. Oct. 23, 2006) (holding that Dura loss is the proper calculation method for measuring parties' financial stake in litigation).

"[T]he court would be abdicating its responsibility under the PSLRA if it were to ignore [the issue of loss causation at the lead plaintiff appointment] stage." In re Comverse, 2007 WL 680779, at *5. Accordingly, "'losses result[ing] from "in-and-out" transactions, which

took place during the class period, but before the misconduct identified was ever revealed to the public' are not to be included in loss calculations" for purposes of selecting lead plaintiff. Bensley, 277 F.R.D. at 238 (quoting In re Comverse, 2007 WL 680779, at *3).

It follows that Ish's losses from the sale of 130 CannaVest shares on March 10, 2014 – prior to the April 3, 2014 disclosure – are not recoverable under Dura and cannot be considered in calculating her losses. Ish's recoverable losses thus amount to $56,643.19.[10]

Ish's arguments to the contrary are not persuasive. First, Ish argues that the issue of loss causation – whether losses are recoverable under Dura – "goes to the merits of the case" and should not be considered by this Court at this stage of the litigation. (Ish Reply Br. (Dkt. No. 47) at 5)  In support of this argument, Ish cites a Western District of Washington case for the proposition that courts should not consider recoverable damages in selecting a lead plaintiff, because "[t]he ups and downs in the fraud premium may be difficult to ascertain even after discovery, much less at the outset of the litigation." In re Watchguard Sec. Litig., No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923, at *14 (W.D. Wash. July 13, 2005). "[I]t is clear[, however,] that the Dura Court did not hesitate to consider loss causation on the pleadings when faced with a pre-discovery motion [to dismiss]." In re Comverse, 2007 WL 680779, at *5; see also Hunt v. Enzo Biochem, Inc., 471 F. Supp. 2d 390, 409-10 (S.D.N.Y. 2006) (dismissing complaint for failure to adequately plead loss causation); In re Veeco Instruments, Inc., 233

---

[10] Under Dura and the last-in, first-out ("LIFO") accounting method that is preferred in this Circuit, Ish must match the last shares purchased to the first shares sold prior to the first corrective disclosure, and then exclude those transactions from her loss figure. Schuck contends that when Ish's pre-disclosure losses are excluded, her recoverable losses are $56,643.19. (See William B. Federman's Declaration in Further Support of Steve Schuck's Motion ("Second Federman Decl.") (Dkt. No. 43), Ex. 1: Recoverable Loss Analysis Pursuant to Dura) At the August 14, 2014 hearing, Ish's counsel conceded that – if pre-disclosure trading losses are excluded – Federman's loss calculation for Ish is correct. (Aug. 14, 2014 Tr. (Dkt. No. 52) at 10-11)

11

F.R.D. at 333-34 (rejecting applicant for lead plaintiff status where applicant had sold all of its stock prior to curative disclosure).

Moreover, "[a]lthough a precise determination of damages is not possible at this stage of the litigation, courts typically equate 'largest financial interest' with amount of potential recovery." Ruland, 2006 WL 3746716 at *5 (emphasis in original). Relying on losses that, under Dura, are clearly not recoverable is irreconcilable with this Court's duty to ascertain which plaintiff has the greatest financial interest in this litigation. See, e.g., In re McKesson HBOC, Inc. Sec. Litig., 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999) (discussing the court's preference for methods that calculate financial interest in terms of recoverable damages, because "[o]ne's 'interest' in a litigation is rather directly tied to what one might recover") (internal quotation marks omitted).

Ish argues, however, that "Dura losses are 'not usually raised in the context of [determining] who has the largest financial interest,'" (Ish Reply Br. (Dkt. No. 47) at 6 (quoting In re Gentiva Sec. Litig., 281 F.R.D. 108, 115 (E.D.N.Y. 2012)), and that – to the extent the issue may be considered at all – it is only when a movant sold "all of its shares before any corrective disclosure, which raises the risk that if a court appoints such a movant, the class could be left with no lead plaintiff after a motion to dismiss or summary judgment." Id. (emphasis in original) (citing In re Gentiva, 281 F.R.D. at 115)  In other words, Ish argues that – at the lead plaintiff stage – Dura loss can only be considered where a lead plaintiff applicant has no recoverable loss whatsoever under Dura.  Such a plaintiff faces the possibility of being dismissed from the class altogether, and will not be able to satisfy the adequacy or typicality requirements of Rule 23. Because Ish sold only a portion of her CannaVest shares before the April 3, 2014 disclosure, she contends that Dura has no application here.  This Court is not persuaded.

12

In this Circuit, courts frequently consider <u>Dura</u> loss even where, as here, a lead plaintiff applicant has sufficiently pled loss causation as to <u>some</u> of her losses. <u>See</u> <u>In re LightInTheBox</u>, 2013 WL 6145114, at *3; <u>In re Comverse</u>, 2007 WL 680779, at *5. Indeed, in <u>In re Comverse</u>, Judge Garaufis explicitly rejected Ish's argument, concluding that "there is simply no basis for this artificial distinction[ between cases in which a lead plaintiff has sufficiently pled loss causation for some of his losses, and cases in which a lead plaintiff applicant has not adequately pled loss causation for any losses]. At bottom, either it is appropriate to consider loss causation, and the principles articulated by <u>Dura</u>, in the context of a PSLRA motion, or it is not." <u>In re Comverse</u>, 2007 WL 680779, at *5. Judge Garaufis concluded that "<u>Dura</u> [and its progeny] . . . require a court to make pre-discovery loss causation determinations regarding asserted claims (or parts of asserted claims) that are based on the facts alleged in the complaint." <u>Id</u>.

This approach is both consistent with <u>Dura</u> and reflects sound case management, as Judge Garaufis explained:

> it would be unfair to speculate that [a lead plaintiff applicant] will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege facts in support thereof. Moreover, such a practice would encourage plaintiffs competing to lead a PSLRA litigation to overstate their losses at the outset of a lawsuit, in hope of a court's declining to look beyond those conclusory allegations until after discovery, when it might be too late to appoint a more deserving lead plaintiff. . . . The exclusion of in-and-out shares follows directly from the underlying holding in <u>Dura</u>.

<u>Id.</u> at 6.

Had Ish's sale of 130 shares on March 10, 2014, occurred after a partial corrective disclosure, her losses from that transaction might have been includable in this Court's financial loss calculation. <u>See</u> <u>In re Gentiva</u>, 281 F.R.D. at 115-16; <u>Ruland</u>, 2006 WL 2035508, at

13

*5 (explaining that a partial fraud disclosure before the end of a class period may mean he suffered recoverable loss). There is no dispute here, however, that the first corrective disclosure took place on April 3, 2014. (Cmplt. (Dkt. No. 2) ¶ 28, 30) Accordingly, transactions that took place prior to April 3, 2014, will not be considered in calculating recoverable loss or in determining lead plaintiff status.

### ii.     Schuck's Proposed Loss Calculation

Schuck purchased and retained CannaVest shares during the Class Period. "[T]he PSLRA's 90-day 'lookback period,' which governs the calculation of damages, should apply to estimating losses in determining the presumptive lead plaintiff, at least in the absence of any credible argument that a different calculation method should apply." Foley v. Transocean Ltd., 272 F.R.D. 126, 130 (S.D.N.Y. 2011). According to Schuck, the applicable "look-back" price is $18.90 per share (Schuck Opp. Br. (Dkt. No. 42) at 7 n.4 (citing 15 U.S.C. § 78u-4(e)(1)), which yields – as to Schuck – a recoverable loss amount of $60,550. Although Schuck filed his brief several days before the expiration of the 90-day "look-back" period, no party has disputed his "look-back" price.

### iii.    Chesner's Proposed Loss Calculation

In his initial brief, Chesner alleged approximate losses of $35,200, calculated using the traditional and statutory method for calculating loss: i.e., total share purchase price minus value of shares sold after corrective disclosure. (Chesner Br. (Dkt. No. 20) at 5 and Ex. 3) In his brief opposing the motions of Ish and Schuck, however, Chesner suggests a different and novel method for calculating loss. Under Chesner's new model, "Dura loss is calculated by crediting only the stock price declines caused by the alleged corrective disclosures," and purchase price is irrelevant. (Chesner Opp. Br. (Dkt. No. 41) at 2) Accordingly, Chesner

14

combines the share declines following the April 3, 2014 and April 14, 2014 corrective disclosures – $7.30 per share and $4.49 per share, respectively, amounting to $11.79 in total – and multiplies this figure by the total number of shares owned by each movant. Application of Chesner's new model results in him having suffered a loss of $12,969, which he claims is the greatest such loss among the movants. (Id.)

Chesner's sole case law support for his new loss model is Espinoza v. Whiting, Nos. 12 Civ. 1711 (SNLJ), et al., 2013 WL 171850 (E.D. Mo. Jan. 16, 2013). Espinoza contains little analysis, however, and – despite Chesner's case citation indicating that Espinoza "collect[s] cases" in which this loss model has allegedly been utilized (see Chesner Opp. Br. (Dkt. No. 41) at 2) – in reality, Espinoza cites no supporting cases. Espinoza itself has never been cited or relied on by another court. Moreover, application of Chesner's proposed new loss model leads to absurd results,[11] and the model is, of course, entirely inconsistent with the traditional calculation method Chesner relied on in his moving brief (see Chesner Br. (Dkt. No. 20) at 5 and Ex. 3). As such, the new proposed model appears to be a transparent "'attempt to manipulate the size of [Chesner's] losses based on information available to [him] at the time of [his] original lead plaintiff motion.'" See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 410 (S.D.N.Y. 2004) (quoting In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 819 (N.D. Ohio 1999)).

Chesner's new loss model – which renders purchase price irrelevant – is inconsistent with the statutory scheme and with Dura itself. As noted above, the PSLRA

---

[11] For example, because purchase price is irrelevant under Chesner's loss calculation model, an investor who bought the stock at $100, watched it rise to $150, then sold the stock at $125 after a corrective disclosure, could recover for the $25 price drop, even though at $125 the investor would have realized a $25 profit.

15

provides for a statutory cap on damages that is calculated based on the "difference between the

purchase or sale price paid . . . by the plaintiff for the subject security and the mean trading price

of that security during the 90-day period beginning on the date on which [disclosure is made]."

15 U.S.C. § 78u-4(e)(1).  Given the statutory scheme, it would be odd to apply a loss model that

precludes any reference to purchase price.

            Moreover, Dura mandates no such approach.  Dura merely holds that, in fraud-

on-the-market cases, "an inflated purchase price will not itself constitute or proximately cause

the relevant economic loss."  Dura, 544 U.S. at 342.  But in holding that a plaintiff must plead

loss causation – i.e., a sale or retention of stock after a corrective disclosure – the Supreme Court

did not rule that purchase price is irrelevant.  To the contrary, the Supreme Court repeatedly

states that purchase price might prove relevant to loss analysis.  For example, the Dura court

states that "[i]f the purchaser sells later after the truth makes its way into the marketplace, an

initially inflated purchase price might mean a later loss."  Id. (emphasis in original)  Similarly,

the Court states that, "[g]iven the tangle of factors affecting price, . . . the higher purchase price

will sometimes play a role in bringing about a future loss."  Id. at 343 (emphasis in original)

            While the Dura court suggests that a plaintiff may face significant obstacles in

demonstrating that the difference between the purchase price and the post-disclosure lower price

is due to the "earlier misrepresentation," rather to than "changed economic circumstances,

changed investor expectations, new industry-specific or firm-specific facts, conditions, or other

events," id. at 343, the Court does not rule out such an outcome.  The Court is also careful to

cabin its holding to a requirement that "a plaintiff prove that the defendant's misrepresentation

(or other fraudulent conduct) proximately cause the plaintiff's economic loss.  We need not, and

do not, consider other proximate cause or loss-related questions."  Id. at 346.  In sum, Dura does

not state that purchase price plays no role in loss analysis, nor does its logic require such an approach.

Finally, countless decisions in this District have – in the context of selecting lead plaintiff – premised discussions of loss in part on purchase price. See, e.g., Phuong Ho v. NQ Mobile, Inc., No. 13 Civ. 8125 (WHP), 2014 WL 1389636, at *1 (S.D.N.Y. Apr. 9, 2014); In re LightInTheBox, 2013 WL 6145114, at *3; Rosian, 2013 WL 5526323, at *2-3; Bo Young Cha, 2012 WL 2025850, at *4-5; In re CMED, 2012 WL 1118302, at *4; Foley, 272 F.R.D. at 130; Richman, 274 F.R.D. at 477-80; Bensley, 277 F.R.D. at 235-36; In re Fuwei Films, 247 F.R.D. at 437 (appointing lead plaintiff who "calculate[d] his financial interest by multiplying the number of shares of [defendant's] stock he purchased . . . by the price paid for those shares, and subtracting the value of the shares he currently holds"); In re Orion Sec. Litig., No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *6 (S.D.N.Y. July 8, 2008) (lead plaintiff "calculate[d] its financial interest by multiplying the number of shares of [defendant's] stock purchased by the price paid for those shares, and subtracting the value of the shares it received when it sold all of its shares"); Kaplan, 240 F.R.D. at 94; In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 102 (S.D.N.Y. 2005).

The adoption of a standard in which purchase price never plays a part in determining loss would work a radical change in the law. Dura requires no such result, and Chesner has not cited sufficient authority to persuade this Court that such a change would be appropriate.[12]   Accordingly, Chesner's new proposed loss calculation model will not be utilized

---

[12]   Chesner attributes the absence of supporting case law to the fact that this case presents "a rare situation . . . where a lot of the stock price decline is unrelated to the fraud." (Aug. 14, 2014 Tr. (Dkt. No. 52) at 23)  Chesner cites no support for this assertion, however, and this Court cannot assume that it is uncommon in the OTC market for a stock to experience a significant price decline in the months preceding a corrective disclosure.

by this Court, and financial interest will be determined by application of the traditional loss

model Chesner and all the other movants relied on in their moving papers.

*     *     *     *

Under the traditional method for calculating loss, approximate recoverable losses

for the movants are as follows: $56,643.19 for Ish, $60,550.00 for Schuck, and $35,200.00 for

Chesner. Accordingly, this Court concludes that Schuck – as the movant with the largest

potential recoverable loss – is the presumptive lead plaintiff.

### B.    Rule 23 Requirements

Fed. R. Civ. P. 23 states that a party may serve as a class representative only if

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class. Fed.R.Civ.P. 23(a). For the rebuttable presumption

to apply, courts have required only a prima facie showing that the requirements of Rule 23 are

met. See In re KIT Digital, Inc. Sec. Litig., 293 F.R.D. 441, 445 (S.D.N.Y. 2013). Furthermore,

"[t]ypicality and adequacy of representation are the only provisions relevant to a determination

of lead plaintiff under the PSLRA." In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42,

49 (S.D.N.Y. 1998); see also Simmons v. Spencer, Nos. 13 Civ. 8216 (RWS), et al., 2014 WL

1678987, at *4 (S.D.N.Y. April 25, 2014); In re KIT Digital, 293 F.R.D. at 445; see also

Varghese v. China Shenghuo Pharms. Holdings, Inc., 589 F. Supp. 2d 388, 397 (S.D.N.Y.

18

2008); Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("Further, at this stage of litigation, only a preliminary showing of typicality and adequacy is required.").

"Typicality is established where each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Freudenberg v. E*Trade Fin. Corp., Nos. 07 Civ. 8538, et al., 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008) (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)). However, "[t]he lead plaintiff's claims 'need not be identical to the claims of the class to satisfy the [preliminary showing of] typicality.'" In re Fuwei Films, 247 F.R.D. at 436 (quoting Pirelli, 229 F.R.D. at 412).

Here, Schuck contends that he "(1) purchased CannaVest common stock during the Class Period at prices alleged to have been artificially inflated by the false and misleading statements issued by Defendants; and (2) was damaged by the alleged fraud." (Schuck Br. (Dkt. No. 22) at 8) This Court is satisfied that Schuck's claims and legal arguments are similar to those of other investors and therefore representative of the putative class. Accordingly, Schuck has made the preliminary showing required for typicality at this stage of the proceedings.

Schuck has also demonstrated that he will fairly and adequately protect the interests of the putative class. The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Kaplan, 240 F.R.D. at 94. Schuck has retained competent and experienced counsel, and has pleaded a loss suggesting that he will have a strong interest in advocating on behalf of class members. Moreover, no movant has suggested that Schuck's claims are subject to unique

19

defenses or otherwise rebutted his presumptive status as lead plaintiff.  Therefore, Schuck will be appointed lead plaintiff.

## III.   APPOINTMENT OF LEAD COUNSEL

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u–4(a)(3)(B)(v).  There is a "strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection."  See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MDL 1529 (LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (quoting In re Cendant Corp. Litig., 264 F.3d 201, 276 (3d Cir. 2001)).

Here, Schuck has selected the law firm of Federman & Sherwood as class counsel, and seeks court approval of this selection.  (Schuck Br. (Dkt. No. 22) at 10)  In support of Schuck's request, William B. Federman, a member of the firm, has submitted a declaration and a firm resume.  (Federman Decl. (Dkt. No. 23) Ex. D)  The resume provides a detailed description of the educational backgrounds and legal experience of the attorneys at the firm, along with a list of more than 50 securities cases in which Federman & Sherwood has served or is now serving as lead or co-lead counsel.  (Id.)  Having reviewed the firm resume and the Federman Declaration, this Court concludes that Federman & Sherwood is qualified to serve as lead counsel in this matter.  Accordingly, the Court approves Schuck's selection of Federman & Sherwood as lead counsel.

## CONCLUSION

For the reasons set forth above, the above-captioned cases are consolidated under the caption In re: CannaVest Corp. Securities Litigation, and the files of these actions shall be

20

maintained in one file under Master File No. 14 Civ. 2900 (PGG). The consolidation is for all purposes, including, but not limited to, discovery, pretrial proceedings, and trial proceedings.

The motion of Steve Schuck to be appointed lead plaintiff is granted, as is Schuck's motion to consolidate related actions and to approve Federman & Sherwood as lead counsel. See Dkt. No. 21. All other motions are denied.

The Clerk of the Court is directed to terminate the motions (14 Civ. 2900 (PGG), Dkt. Nos. 19, 21, 24, 27, 34; 14 Civ. 3079 (PGG), Dkt. No. 17). The Court will hold an initial pre-trial conference in this matter on April 30, 2015 at 10:30 a.m. in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York, 10007. Counsel for Lead Plaintiff and the Defendants are directed to submit a joint letter and proposed Case Management Plan by April 23, 2015, in accordance with this Court's Individual Rules of Practice in Civil Cases.

Dated: New York, New York          SO ORDERED.
       March 19, 2015

Paul G. Gardephe
United States District Court

21